UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA MARIE RAM,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:17-cv-00561-JDP<br><br>ORDER ON SOCIAL SECURITY APPEAL<br><br>(Doc. No. 1.) |

## I.  INTRODUCTION

Plaintiff Tina Marie Ram has filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI").  (Doc. No. 1.)  The case has been submitted on the parties' briefs.  The court will reverse and remand for further proceedings.

## II.  THE DISABILITY EVALUATION STANDARD

A person has a "disability" under the Social Security Act if the claimant cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The physical or mental impairment must be an anatomical, physiological, or psychological

abnormality "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. §§ 423(d)(3), 1382c(a)(3)(D). The impairment must be sufficiently severe that the claimant cannot perform her previous work and cannot—considering her age, education, and work experience—engage in substantial gainful work that exists in the national economy. *See id*. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must consider the combined effect of all the claimant's impairments, regardless of whether any individual impairment is on its own severe enough to constitute a disability. *See id*. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Social Security Administration has a sequential, five-step process for evaluating a claimed disability. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(f). If a claimant is determined to be either disabled or not disabled at any step in the sequence, the analysis ceases without a consideration of subsequent steps. *Id*. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. *Id*. §§ 404.1520(b), 416.920(b). At step two, the Commissioner considers whether the claimant has a severe impairment or combination of impairments that significantly limit his ability to perform basic work activities. *See id*. §§ 404.1520(c), 416.920(c). At step three, the Commissioner determines whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"). *See id*. §§ 404.1520(d), 416.920(d). At step four, the Commissioner determines whether the claimant can perform his or her past jobs. *See id*. §§ 404.1520(f), 416.920(f). At step five, the Commissioner determines whether the claimant can perform other work that exists in significant numbers in the national economy. *See id*. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### III. PROCEDURAL BACKGROUND

Ram has filed an application for SSI claiming disability beginning September 30, 2012. AR 172-80.[1] The decision of the Administrative Law Judge ("ALJ") to deny benefits on July 31,

---

[1] All "AR" citations refer to the administrative record. (Doc. No. 9.)

1    2015 became the final decision of the Commissioner when the Commissioner's Appeals Council

2    denied Ram's request to review the appeal. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R.

3    §§ 404.981, 416.1481. The ALJ's decision is now before this court for review.

4            **IV.    THE COMMISSIONER'S FINAL DECISION**

5            The ALJ found that Ram was not disabled. AR 31. At step one, the ALJ found that Ram

6    had not engaged in substantial gainful activity since the alleged onset date of her disability,

7    September 30, 2013. AR 24. The ALJ then found severe impairments at step two: multiple

8    sclerosis, asthma, and depression. *Id.* At step three, the ALJ found that Ram did not have an

9    impairment or combination of impairments that met or medically equaled one of the listing

10   impairments in 20 C.F.R. Part 404 P, Appendix 1. *Id.* Between step three and step four, the ALJ

11   determined that Ram had the residual functional capacity ("RFC") to:

12                       perform medium work as defined in 20 CFR 416.967(c) except the
                         claimant can lift and carry 50 pounds occasionally and 25 pounds
13                       frequently, sit for six hours in an 8-hour day, and stand and/or walk
                         for six hours in an 8-hour day. She should avoid exposure to gas,
14                       dust, and fumes. She is limited to simple repetitive tasks with
                         occasional interaction with co-workers and the public. She can
15                       only occasionally maintain concentration, persistence, and pace in a
                         low stress environment due to mental health factors.
16

17

18   AR 25. In reaching this determination, the ALJ discounted the medical opinion of Dr. Hylton,

     Ram's treating neurologist:
19

20                       As for opinion evidence, Dr. Diana Hylton reported in June 2015
                         that the claimant has disabling multiple sclerosis causing cognitive
21                       dysfunction with fatigue, severe memory loss, attention deficit
                         issues, and progressive cognitive loss. Her entire disability was
22                       mental, and she had been on medications to attempt to improve her
                         symptoms without any good results. She has been unable to work
23                       since 2000. She was totally disabled and unable to work
                         permanently and not malingering (Exhibit 14F, pp. 2, 5). Because
24                       this opinion about the claimant's ability to perform past work or
                         any work concerns an issue reserved to the Commissioner and is
25                       not an opinion as to the nature and severity of the claimant's
                         impairment, it cannot be accorded any significant weight (20 CFR
26                       § 416.927(e) and Social Security Ruling 96-5p). Dr. Hylton's
                         belief that the claimant is unemployable is a conclusory statement
27

28

                                                   3

1    and does not include specific work-related limitations or the
2    medical evidence to support the cause for the limitations.

3    AR 27.

4        At step four, the ALJ found that Ram had no past relevant work.  AR 30.  The ALJ

5    therefore proceeded to step five, where—after considering Ram's age, education, work

6    experience, and RFC in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. § 404,

7    Subpart P, App. 2—he concluded that "there are jobs that exist in significant numbers in the

8    national economy that the claimant can perform."  AR 30.  The ALJ thus concluded that Ram was

9    not disabled as defined in the Social Security Act.  AR 31.

10       **V.    ARGUMENTS ON APPEAL**

11       Ram's arguments on appeal focus on the ALJ's conclusions in formulating Ram's residual

12   functional capacity between steps three and four of the disability evaluation process.  (Doc. No.

13   14, at 14.)  Ram argues that the ALJ erred by improperly discounting the medical opinion of

14   plaintiff's treating neurologist, Dr. Hylton.  (*Id.*)  First, she argues that the ALJ "fail[ed] to apply

15   the appropriate factors in determining the extent to which the opinion should be credited . . . such

16   as the length of the treating relationship, the frequency of examination, the nature and extent of

17   the treatment relationship, or the supportability of the opinion."  (Doc. No. 14, at 15 (quoting

18   *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (citing 20 C.F.R. § 4041527(c)(2)-(6))).).

19   Second, she argues that the ALJ's rejection of Dr. Hylton's opinion on the basis that it concerned

20   issues reserved to the Commissioner was improper because "adjudicators must always carefully

21   consider medical source opinions about any issue, including opinions about issues that are

22   reserved to the Commissioner."  (Doc. No. 14, at 16 (quoting Social Security Ruling 96-5p).)

23   Third, she argues that the ALJ did not consider portions of Dr. Hylton's opinion that, contrary to

24   the ALJ's statement, included specific work-related limitations.  (Doc. No. 14, at 16 (citing AR

25   27).)  Finally, she argues that the ALJ's statement that Dr. Hylton's opinion is unsupported by

26   medical evidence is contrary to the record.  (Doc. No. 14, at 17.)

27       In response, the Commissioner contends that "the ALJ properly rejected the opinion of Dr.

28

1  Hylton . . . because the ultimate determination of disability is not purely a medical decision, and

2  is reserved to the Commissioner." (Doc. No. 15, at 8.)  The Commissioner further argues that

3  there were other reasons for discounting Dr. Hylton's opinion: First, Dr. Hylton's opinion was

4  unsupported by her own treatment notes. (Doc. No. 15, at 9.)  Second, Dr. Hylton "had become

5  an advocate for Plaintiff and her opinion was no longer reliable." (*Id.*)  Third, Dr. Hylton's

6  treatment notes are internally inconsistent. (*Id.*)  Finally, Dr. Hylton's opinion was contradicted

7  by other doctors. (*Id.* at 10-11.)

8       **VI.     STANDARD OF REVIEW**

9       A district court will set aside the Commissioner's final decision denying benefits only if

10  that decision is either (1) not supported by substantial evidence or (2) based on a legal error. *See*

11  42 U.S.C. § 405(g); *Wellington v. Berryhill*, 878 F.3d 867, 871 (9th Cir. 2017).  "Substantial

12  evidence means more than a mere scintilla, but less than a preponderance; [i]t means such

13  relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels*

14  *v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human*

15  *Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).  In evaluating whether a decision of the Commissioner

16  was based on substantial evidence, the court reviews the "entire record as a whole, weighing both

17  the evidence that supports and the evidence that detracts from the Commissioner's conclusion,

18  and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter*

19  *v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citations omitted).

20  If the evidence can reasonably support either affirming or reversing the Commissioner's final

21  decision, the court may not substitute its judgment for that of the Commissioner—and thus

22  affirms under the substantial evidence standard. *Id.*; *see Revels*, 874 F.3d at 654 ("Where

23  evidence is susceptible to more than one rational interpretation, the ALJ's decision should be

24  upheld." (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)).  However, in evaluating

25  whether a decision is supported by substantial evidence, the court reviews only the reasons

26  provided by the Commissioner in the disability determination and may not affirm based on a

27  ground upon which the Commissioner did not rely. *See Revels*, 874 F.3d at 654.  The court will

28  find legal error if it concludes that the Commissioner applied the wrong legal standard. *See*

5

1   *Wellington v. Colvin*, 2016 WL 224184, at \*5 (E.D. Cal. Jan. 19, 2016), *aff'd sub*

2   *nom. Wellington v. Berryhill*, 878 F.3d 867 (9th Cir. 2017).

3       **VII.   DISCUSSION**

4       **A. Analysis**

5           The weight given medical opinions depends in part on whether the opinions are proffered

6   by treating, examining, or non-examining professionals. *See Lester v. Chater*, 81 F.3d 821, 830

7   (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who

8   has a greater opportunity to become acquainted with and observe the patient as an individual. *See*

9   *id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). An ALJ may reject an

10  uncontradicted opinion of a treating or examining medical professional only for "clear and

11  convincing" reasons. *Lester*, 81 F.3d at 831. If a treating professional's opinion is contradicted

12  by an examining professional's opinion that is supported by different independent clinical

13  findings, the ALJ may resolve the conflict. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

14  1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). A contradicted opinion

15  of a treating or examining professional may be rejected for "specific and legitimate" reasons. *See*

16  *Lester*, 81 F.3d at 830. In any event, the ALJ need not give weight to conclusory opinions

17  supported by minimal clinical findings. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.

18  1999) (treating physician's conclusory, minimally supported opinion rejected); *see*

19  *also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, without other

20  evidence, is insufficient to reject the opinion of a treating or examining professional. *See Lester*,

21  81 F.3d at 831.

22          Additionally, before rejecting the medical opinion of a treating physician, an ALJ is

23  required to consider certain factors as laid out in 20 C.F.R. § 404.1527(c). The regulations

24  provide:

25              When we do not give the treating source's medical opinion
                controlling weight, we apply the factors listed in paragraphs
26              (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors
                in paragraphs (c)(3) through (c)(6) of this section in determining the
27              weight to give the medical opinion. We will always give good

28

6

reasons in our notice of determination or decision for the weight we
give your treating source's medical opinion.

20 C.F.R. § 404.1527(c)(2). The required factors include the length of the treatment relationship
and the frequency of examination, the nature and extent of the treatment relationship, the extent to
which the opinion is supported by evidence, the consistency of the opinion with the record as a
whole, and whether the medical source is a specialist. *Id.* The omission of this analysis is legal
error, and post hoc rationalizations for the omission do not alleviate the problem. *See Connett v.
Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("[Courts] are constrained to review the reasons the
ALJ asserts.").

Here, the ALJ did not apply the required factors to Dr. Hylton's opinion, and the failure to
do so amounts to legal error. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (holding
that outright rejection of a medical opinion without applying the § 404.1527(c)(2) factors "alone
constitutes reversible legal error."). Before engaging in harmless error analysis, however, we will
review the reasons provided by the ALJ for rejecting Dr. Hylton's opinion. Since the doctor's
opinion was contradicted, it was subject to rejection for "specific and legitimate" reasons. *Lester*,
81 F.3d at 830. The ALJ stated that he rejected Dr. Hylton's opinion, or at least a key portion of
it[2], because the opinion "concern[ed] an issue reserved to the Commissioner and [was] not an
opinion as to the nature and severity of the claimant's impairment." AR 27.

As to the first portion of this statement: although the ultimate determination of disability is
reserved to the Commissioner and "treating source opinions on issues that are reserved to the
Commissioner are never entitled to controlling weight or special significance," Social Security
Ruling 96-5p, this principle does not justify casting aside Dr. Hylton's opinion. Dr. Hylton's use
of the terms "disabling" and "disability" should be understood in the medical sense, not as
statements of legal conclusions. AR 395. The doctor's decision to feature such terms in her short
summary of plaintiff's condition does not provide a basis for rejecting out of hand all her medical

---

[2] The ALJ stated that Dr. Hylton's opinion that plaintiff "was totally disabled and unable to work
permanently and not malingering" "cannot be accorded *any* significant weight" (emphasis added).
AR 27.

7

opinions, which were the culmination of years of treatment and which are supported by the administrative record.[3] *See* AR 318-20, 391-95, 396-98, 408-10, 429-32, 449-52. As provided in the internal agency guidance document on which the ALJ relied in discounting plaintiff's claim, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Social Security Ruling 96-5p.

The second portion of ALJ's proffered basis for rejecting the key portion of Dr. Hylton's opinion—that Dr. Hylton's opinion was not an "opinion as to the nature and severity of the claimant's impairment"—is no more convincing. AR 27. To the extent that the ALJ's statement applies to Dr. Hylton's opinion generally, it appears to overlook Dr. Hylton's conclusions that plaintiff suffers from "severe fatigue, severe memory loss, attention deficit issues, and progressive cognitive loss." AR 395. Dr. Hylton's treatment records provide support for these conclusions. Of particular note is an MRI of Ram's brain from June 17, 2018. AR 393. This brain scan was positive for "[d]iffuse white matter changes compatible with patient's diagnosis of multiple sclerosis" and "suspicious for active plaques." AR 393. Dr. Hylton's Progress Note dated July 2, 2015 contains her review of the MRI, stating "MRI shows [increased] activity with active plaques," and her assessment that "[t]his is why [Ms. Ram is] not doing good." AR 392. The ALJ briefly referenced this MRI in his decision, AR 30, but he ignored Dr. Hylton's interpretation of it, concluding that "[t]here is no evidence that [plaintiff's multiple sclerosis, asthma, and depression] have required more than sporadic medical treatment or resulted in any medical complications." *Id.* Dr. Hylton's records provide evidence of more than sporadic treatment, and her conclusions referenced earlier in this paragraph testify to medical complications.

---

[3] In rejecting Dr. Hylton's opinion, the ALJ additionally stated that the doctor's opinion that plaintiff was "unemployable" was "a conclusory statement that does not include specific work-related limitations or the medical evidence to support the cause for the limitations." AR. 27. Dr. Hylton's statement that plaintiff was "unable to work permanently" may have departed from her core area of expertise—neurological medicine—but, as noted in the text of this order, this does not justify wholesale disregard of her medical opinion. *Id.* at 395.

**B. Harmless Error Analysis**

Having found that the ALJ erred in considering the medical opinion testimony in the record, the court must now consider whether the ALJ's errors are harmless. "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). In assessing whether an error is harmless, the court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id.*

The ALJ's errors are not harmless. Had Dr. Hylton's medical opinion been fully credited, a different disability determination could well have been reached. Dr. Hylton opined that plaintiff's multiple sclerosis has resulted in severe fatigue, severe memory loss, attention deficit issues, and progressive cognitive loss. AR 395. Dr. Hylton further added that Ram was not malingering, that her cognitive issues had no solution, and that Ram was "totally disabled and unable to work permanently." *Id.* Crediting this opinion could have changed the ALJ's opinion.

**C. Appropriate Remedy**

Having concluded that the ALJ committed legal error and that the error was not harmless, the court must determine the appropriate remedy. "[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). This "ordinary remand rule" respects the Commissioner's role in developing the factual record and helps guard against the displacement of administrative judgment by judicial decree. *See Treichler*, 775 F.3d at 1099-100. When an ALJ makes a legal error but there are ambiguities or outstanding issues in the record, the proper approach is to remand for further proceedings, not to apply the "credit-as-true" rule. *See id.* at 1105.

The "credit-as-true" rule "permits, but does not require, a direct award of benefits on review where the ALJ has not provided sufficient reasoning for rejecting testimony and there are no outstanding issues on which further proceedings in the administrative court would be useful."

9

*Leon v. Berryhill*, 874 F.3d 1130, 1131 (9th Cir. 2017). Courts most frequently apply the rule to credit a claimant's testimony regarding the severity of his or her symptoms, but medical opinions may also be credited as true. *Id.*; *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989) (extending the "credit-as-true" rule to medical opinions). Once a statement is credited as true, "the court should then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of [the] proceeding." *Leon*, 874 F.3d at 1131-32 (internal quotation marks omitted). "Then, and only under these circumstances," may an award of benefits be appropriate. *Leon*, 874 F.3d at 1131. In fact, "[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Id.* at 1132.

For this court to depart from the ordinary remand rule and award benefits under the credit-as-true rule, three requirements must be met. *Garrison*, 759 F.3d at 1019-21. First, the court must determine that the ALJ committed legal error, such as by failing to provide legally sufficient reasons for rejecting certain evidence. *See Dominguez*, 808 F.3d at 407. Second, the court must determine whether "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. In making this determination, the court reviews the record as a whole and asks whether there are conflicts, ambiguities, or gaps in the record such that essential factual issues have not been resolved. *See Dominguez*, 808 F.3d at 407 (citation omitted). Where there are outstanding issues that require resolution, the proper approach is to remand the case to the agency for further proceedings. *See Treichler*, 775 F.3d at 1101, 1105.

Third, and finally, if the court determines that the record has been fully developed and there are no outstanding issues left to be resolved, the court must consider whether "the ALJ would be required to find the claimant disabled on remand" if the "improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (quoting *Garrison*, 759 F.3d at 1020). "If so, the district court may exercise its discretion to remand the case for an award of benefits." *Id.* However, even when the requirements of the credit-as-true rule are satisfied,

district courts retain flexibility to remand for further proceedings when the record as a whole

creates "serious doubt" as to whether the claimant is disabled. *Id.* at 1021.

Here, the court cannot find that all the credit-as-true requirements are satisfied. Essential

factual issues remain unresolved, *see Dominguez*, 808 F.3d at 407, so the court cannot say that

"the record has been fully developed and further administrative proceedings would serve no

useful purpose"—the second requirement for the rule's application. *Garrison*, 759 F.3d at 1020.

At the oral hearing, Ram's counsel posed a hypothetical question to the Vocational Expert

("VE"), asking whether jobs exist in the national economy for a person with "all the same

vocational factors as the Claimant," but with the added limitation that the person "need[ed] an

extra break of approximately one hour unscheduled." AR 71, 73. The VE responded that no jobs

would exist for such a person. *Id.* at 71. Ram's counsel indicated that the added limitation was

based on Dr. Hylton's medical opinion. AR 72-73. However, Dr. Hylton did not identify

specific, work-related limitations such as the requirement for one-hour, unscheduled breaks. *See*

AR 395. Instead, Dr. Hylton merely described Ram's ailments in general terms: "severe fatigue,

severe memory loss, attention deficit issues, and progressive cognitive loss since the onset of her

multiple sclerosis." *Id.* Even if Dr. Hylton's opinion as to plaintiff's symptoms were credited as

true, the court would be ill-suited to translate this opinion into specific, work-related limitations.

*See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("In cases where the testimony of the

vocational expert has failed to address a claimant's limitations as established by improperly

discredited evidence," courts "consistently have remanded for further proceedings rather than

payment of benefits."); *see also Graham v. Colvin*, No. C14-5311BHS, 2015 WL 509824, at *7

(W.D. Wash. Feb. 6, 2015) (remanding for further proceedings where there was a "lack of

vocational expert testimony based on the limitations" contained in improperly discredited

evidence).

For the foregoing reasons, the court declines to depart from the ordinary remand rule in

this case. Therefore, the appropriate remedy is to remand this action for further proceedings. *See*

*Harman*, 211 F.3d at 1180.

**VIII. CONCLUSION AND ORDER**

Plaintiff Tina Marie Ram's appeal from the administrative decision of the Commissioner of Social Security is granted. This case is remanded for further proceedings consistent with this order. The clerk of court is directed to (1) enter judgment in favor of plaintiff Tina Marie Ram and against defendant Commissioner of Social Security, and (2) close this case.

IT IS SO ORDERED.

Dated:     September 28, 2018     _____

UNITED STATES MAGISTRATE JUDGE

12